[Cite as *State v. Nitzsche*, 2012-Ohio-688.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

PETER A. NITZSCHE

    Appellant

C.A. No.     25783

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CR 2010-04-1122 (B)

DECISION AND JOURNAL ENTRY

Dated: February 22, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1} For his alleged involvement in operating two methamphetamine labs, a jury found Peter Nitzsche guilty of two counts of illegal manufacture of drugs, two counts of illegal assembly or possession of chemicals for the manufacture of drugs, aggravated possession of drugs, and illegal use or possession of drug paraphernalia. The trial court sentenced him to 12 years in prison. Mr. Nitzsche has appealed, assigning as error that the trial court incorrectly failed to declare a mistrial, that his convictions were not supported by sufficient evidence, and that his convictions are against the manifest weight of the evidence. We affirm because there was sufficient evidence to connect Mr. Nitzsche to the methamphetamine labs, his convictions are not against the manifest weight of the evidence, and the trial court correctly denied his motion for mistrial.

FACTS

{¶2}    On April 20, 2010, police responded to a call that there was smoke coming from a residential garage.  When officers arrived at the address, they did not see any smoke, but did smell an unusual odor.  They inspected a couple of cars that were in the driveway and saw a box of syringes inside one of them.  They also knocked on the front door of the house, but no one answered.  While walking around the house, the officers saw two men looking out a back window.  The officers called to the men, Joseph Johnston and Peter Nitzsche, who came outside.  Mr. Nitzsche did not have any outstanding warrants, so the officers let him leave.  Mr. Johnston, on the other hand, had an outstanding warrant and appeared to be experiencing the effects of methamphetamine, so he was detained.

{¶3}    While the officers were still at the house, Mr. Johnston's mother came to the door.  She told the officers that it was her house and gave them permission to search it.  Inside the basement and one of the bedrooms, officers found a number of items associated with the manufacture of methamphetamine.  They also saw Mr. Nitzsche ride past the house two times in a white van.  After the van drove past the house the second time, some of the officers stopped it and arrested Mr. Nitzsche.

{¶4}    Three months later, while Mr. Nitzsche was on bond, police received a 911 call from Jessica Montoney, the mother of Mr. Nitzsche's children, reporting that Mr. Nitzsche had attacked her at his mother's house.  When police arrived, they learned that Ms. Montoney takes care of Mr. Nitzsche's mother and that she had found what she believed to be methamphetamine in the basement of the house. They also learned that, when Mr. Nitzsche found out that she had attempted to flush the drugs down a toilet, he attacked her.  The officers obtained permission from Mr. Nitzsche's mother to search the house and found items in the basement that are used in

the manufacture of methamphetamine. They also found the substance that Ms. Montoney had attempted to flush down the toilet.

{¶5} The Grand Jury indicted Mr. Nitzsche for illegal manufacture of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, and aggravated possession of drugs for his connection with the first methamphetamine lab. It indicted him for illegal manufacture of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, aggravated possession of drugs, illegal use or possession of drug paraphernalia, and domestic violence for his connection with the second lab. Before trial, Mr. Nitzsche pleaded guilty to the domestic violence count and stipulated that he had a prior conviction for illegal assembly of chemicals for the manufacture of drugs. A jury found him guilty of the offenses except the aggravated possession of drugs count arising out of the lab at his mother's house.

SUFFICIENCY

{¶6} Mr. Nitzsche's first assignment of error is that the trial court incorrectly denied his motion for judgment of acquittal under Rule 29 of the Ohio Rules of Criminal Procedure. Under Rule 29(A), a defendant is entitled to a judgment of acquittal on a charge against him "if the evidence is insufficient to sustain a conviction . . . ." Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33. We must determine whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of his guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

{¶7} Mr. Nitzsche has not argued that the State failed to present evidence of each of the substantive elements of the crimes. Rather, he has argued that it failed to prove that he was the

one who committed them. According to Mr. Nitzsche, the only evidence that tied him to the methamphetamine lab at Mr. Johnston's mother's house was the fact that he was at the house when police arrived. He has also argued that, even though he sometimes spent the night at his mother's house, there was no evidence that he lived at the house.

{¶8} Regarding the lab at Mr. Johnston's mother's house, officers testified that they were at the house for five to ten minutes before they saw Mr. Johnston and Mr. Nitzsche through a window. They also said that no one came to or left the house during that time. One of the officers who searched the house testified that they discovered an "icy slush" in the basement. The discovery indicated "that the cooking process was . . . going on at that time" because it was a warm day and the ice was not melted. Another officer agreed that, because of the ice, it suggested that the manufacturing activities that occurred at the house "had to have been very recent."

{¶9} A defendant may be convicted of a principal offense based on proof that he was complicit in its commission. *State v. Herring*, 94 Ohio St. 3d 246, 251 (2002). Under Section 2923.03(A) of the Ohio Revised Code, "[n]o person, acting with the kind of culpability required for the commission of an offense, shall . . . (1) [s]olicit or procure another to commit the offense; (2) [a]id or abet another in committing the offense; (3) [c]onspire with another to commit the offense . . . [or] (4) [c]ause an innocent or irresponsible person to commit the offense." In this case, the trial court instructed the jury regarding aiding and abetting. "To support a conviction for complicity by aiding and abetting . . . , the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be

inferred from the circumstances surrounding the crime." *State v. Johnson*, 93 Ohio St. 3d 240, syllabus (2001).

{¶10} Viewing the evidence in a light most favorable to the State, we conclude that it presented sufficient circumstantial evidence from which the jury could infer that Mr. Nitzsche was complicit in operating the methamphetamine lab at Mr. Johnston's mother's house. Mr. Nitzsche was present in the house with Mr. Johnston at a time when the methamphetamine lab was operating. The State also submitted a recording of a telephone call Mr. Nitzsche made from jail in which he admitted that he had been through the entire house before the police had arrived.

{¶11} Regarding the lab at Mr. Nitzsche's mother's house, officers testified that they learned from Mr. Nitzsche's mother that Mr. Nitzsche has a bedroom at the house, that he had spent the previous evening at the house, and that he had been at the house for most of that day. They also found Mr. Nitzsche's identification in one of the bedrooms. In addition, the officer who responded to Ms. Montoney's 911 call testified that Ms. Montoney told her Mr. Nitzsche attacked her after learning that she had disposed of the substance that she found in the basement. The officer further testified that, as she was talking to Ms. Montoney, Mr. Nitzsche called and told Ms. Montoney not to let the officers into the house. Viewing the evidence in a light most favorable to the prosecution, we conclude that there was sufficient circumstantial evidence from which a jury could determine that Mr. Nitzsche was responsible for the materials found in his mother's basement. Mr. Nitzsche's first assignment of error is overruled.

## MANIFEST WEIGHT

{¶12} Mr. Nitzsche's second assignment of error is that his convictions are against the manifest weight of the evidence. If a defendant argues that his convictions are against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence

and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (1986).

{¶13} Regarding the lab at Mr. Johnston's mother's house, Mr. Nitzsche has argued that, even though police found items related to it in the basement and one of the bedrooms, the evidence showed that he was only in the kitchen of the house. Mr. Nitzsche has noted that Mr. Johnston testified that Mr. Nitzsche only entered the house to wash his hands and did not know anything about the lab. According to Mr. Nitzsche, Mr. Johnston's testimony exonerated him.

{¶14} Mr. Johnston testified that Mr. Nitzsche and he had spent the past few days together getting high on methamphetamine. He also said that Mr. Nitzsche and he had been together that entire day. While he claimed that Mr. Nitzsche had only been in the kitchen of the house, we have previously noted that Mr. Nitzsche told someone from jail that he had been through the entire house prior to the officers' arrival. In addition, Mr. Nitzsche has not disputed that the icy slush found by officers suggested that someone had been producing methamphetamine at the house that same day. Accordingly, we conclude that the jury did not lose its way when it determined that Mr. Johnston's testimony about Mr. Nitzsche's lack of involvement in the lab was not credible.

{¶15} Regarding the lab in his mother's basement, Mr. Nitzsche has argued that, considering one of the basement windows was broken, it is possible that someone else placed the items there. Even if that were possible, Mr. Nitzsche's theory fails to explain why he would attack the mother of his children when he learned that she got rid of things that an intruder had hidden in his mother's basement. We conclude that the jury did not lose its way when it

convicted him of the offenses related to the lab at his mother's house.  Mr. Nitzsche's second assignment of error is overruled.

## MISTRIAL

{¶16}  Mr. Nitzsche's third assignment of error is that the trial court incorrectly failed to declare a mistrial.  During the direct examination of one of the police officers who processed the lab at Mr. Johnston's mother's house, the prosecutor asked whether the officer had seen Mr. Nitzsche at the house on a previous day.  The officer answered that he had "never seen him at that house.  I know I've had several –," but was not allowed to finish his sentence because of an objection by Mr. Nitzsche's lawyer.  The prosecutor subsequently asked the officer whether Mr. Nitzsche was part of his investigation of the lab at the house, how the investigation had started, and how long it had lasted.  Mr. Nitzsche has argued that the questions and answers were part of an improper attempt by the prosecution to interject hearsay evidence about conversations the officer had had with unidentified informants and to imply that those informants had connected him to the activities at the house.

{¶17}  "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Evid. R. 801(C).  Rule 801(A) of the Ohio Rules of Evidence defines "statement" as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion."  Under Rule 802, "[h]earsay is not admissible except as otherwise provided by . . . these rules . . . ."

{¶18}  The prosecutor's questions about how long the officer had investigated activities at the house and whether Mr. Nitzsche was part of the investigation did not involve out-of-court statements and, therefore, were not hearsay.  Evid. R. 801(C).  Although the officer testified that

he started investigating the house because the police had received complaints about it, his answer was offered for the effect on the listener, not the truth of the complaints. Accordingly, the officer's answer was also not hearsay. *Id.* Finally, considering that the court interrupted the officer's "I know I've had several" statement, it is impossible to determine whether it would have involved hearsay.

{¶19} Mr. Nitzsche has failed to establish that the trial court should have declared a mistrial. His third assignment of error is overruled.

## CONCLUSION

{¶20} The State presented sufficient circumstantial evidence to connect Mr. Nitzsche to the methamphetamine labs at his mother's and Mr. Johnston's mother's houses, Mr. Nitzsche's convictions are not against the manifest weight of the evidence, and the trial court correctly denied his motion for mistrial. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CLAIR E. DICKINSON
FOR THE COURT


CARR, P.J.
MOORE, J.
CONCUR

APPEARANCES:

DONALD R. HICKS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.